# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| STEPHEN MILLER,<br>    *Plaintiff*, | |
| v. | No. 3:17-cv-01711 (JAM) |
| CHARLES STALLWORTH, *et al.*,<br>    *Defendants*. | |

## ORDER GRANTING MOTION TO DISMISS

Plaintiff Stephen Miller brings this action against defendants Charles Stallworth and East End Baptist Tabernacle for what the Court construes to be claims for false arrest and malicious prosecution in violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983. Defendants have moved to dismiss this action.

The Court will grant defendants' motion to dismiss for three reasons. First, plaintiff has not alleged facts that give rise to plausible grounds for relief. Second, because the complaint alleges that plaintiff pleaded no contest to charges stemming from his arrest, the Court may not grant money damages under the rule of *Heck v. Humphrey*, 512 U.S. 477 (1994). Third, because plaintiff has not alleged a favorable termination of the charge or charges stemming from his arrests, he cannot sustain a claim for false arrest or malicious prosecution.

### BACKGROUND

Plaintiff has filed a complaint titled "Damages for False Charges." Doc. #1 at 1. The complaint names two defendants: Rev. Charles Stallworth and the East End Baptist Tabernacle Church. It states that plaintiff "brings this action seeking damages following a no contest plea due to the payment by defendants to off duty Bridgeport police officer Roger Reid hired to arrest the plaintiff if he came to church services" at the East End Baptist Tabernacle Church. *Ibid.* (¶ 1).

1

The complaint goes on to describe how plaintiff went to the church on June 21, 2015, after having attended a service at the church one week before without incident. Plaintiff appeared at the church wearing a T-shirt stating: "5 COPS MURDERED ERIC GARNER," which "induced friendly comments by many African Americans." *Ibid.* (¶ 2).

Officer Reid (who is not named as a defendant) was standing in front of the church when plaintiff arrived. Plaintiff was in the lobby of the church speaking with two church members when Officer Reid approached him with a piece of paper and asked to speak to him outside. Officer Reid then spoke to plaintiff about allegedly harassing emails, and plaintiff denied sending emails. Officer Reid called for back-up and then arrested plaintiff, and plaintiff's car was towed away.

About six weeks later, Officer Reid arrested plaintiff again on August 2, 2015, at a Stop and Shop supermarket in Bridgeport. According to plaintiff, "[t]he surveillance film in the store was altered in spite of a court order to preserve the film proving these charges false too." *Id.* at 2 (¶ 7).

> In both cases witnesses lied for the police story. These lies were voluntary which concerned me for the integrity of a jury regardless of the evidence. With the court's disregard of the speedy trial motions and the destruction of the exculpatory film I decided a trial was too risky; pleading no contest.

*Id.* at 2 (¶ 8).

The complaint goes on to describe plaintiff's "PURPOSE TO ATTEND THIS AFRICAN AMERICAN CHURCH" and his "concern for the endless injustice of African Americans being murdered by police officials without any charges filed by district attorneys or United State's attorneys regardless of glaring proof was being protested in an absurd, ineffective manner." *Id.* at 3. "I don't know these churches or their pastors so I approached Bishop John Diamond to explain a better strategy," and "Rev. Diamond referred me to defendant Rev. Stallworth explaining

2

Stallworth was a political leader." *Ibid.* The complaint concludes with the following two paragraphs:

> Recently the Kaepernick protest was reversed by the media never using the accurate work "murder" replaced by "brutality". Each black victim is dead none were alive from brutality but black leaders ignore this glaring fact.
>
> Never using the word "murder" by anybody proves the power of the media putting the entire country in a deep trance. Being shoved or hit brutally results rarely in death.

*Ibid.* The complaint seeks $200,000 and attorney's fees. *Ibid.*

On January 29, 2018, plaintiff moved to file an amended complaint to seek "punitive damages of $153,000,000 for the violation of the Plaintiff's civil liberties, harassment, emotion, and financial distress." Doc. #16 at 1. Plaintiff alleges that "[o]nly the defendant can explain the arrest for the court," and that he was the victim of "a deliberate trap to arrest the plaintiff" and that the "proceedings were paid for and ordered by the defendant herein." *Id.* at 2. "It is not conclusory to conclude by deductions the events that the plan was ready before the plaintiff arrived." *Ibid.* The plaintiff adds that "[t]he charges for my arrest were never dismissed." *Id.* at 4 (¶ 6).

The balance of plaintiff's amended complaint alleges facts similar to the initial complaint concerning his arrest and includes many allegations about plaintiff's concern for the mistreatment of African Americans. It concludes stating that "[t]he defendant is a leader of many pastors who bleed their congregations. He feared the plaintiff would expose a rich insidious scam conspiracy by all pastors encouraging 'no justice no peace' by Al Sharpton, a known swindler Democrat operator?" *Id.* at 8. Defendants have moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6).

**DISCUSSION**

The background principles governing a Rule 12(b)(6) motion to dismiss are well established. The Court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless the facts it recites are enough to state plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014). This "plausibility" requirement is "not akin to a probability requirement," but it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Because a court should focus on what facts a complaint alleges, a court is "not bound to accept as true a legal conclusion couched as a factual allegation" or "to accept as true allegations that are wholly conclusory." *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014). In short, the Court's role is to determine if the complaint—apart from any of its conclusory allegations—alleges enough facts to state a plausible claim for relief.

The Court liberally construes the pleadings of a *pro se* party in a non-technical manner to raise the strongest arguments that they suggest. *See, e.g.*, *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 157 (2d Cir. 2017) (*per curiam*). Still, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

Although the complaint does not cite any particular law that defendants violated, I construe the complaint to allege claims for false arrest and malicious prosecution in violation of the Fourth Amendment. *See Spak v. Phillips*, 857 F.3d 458, 461 n.1 (2d Cir. 2017) (describing elements of malicious prosecution claim); *Edelman v. Page*, 2015 WL 1395893, at *11 (D.

Conn. 2015) (describing elements of false arrest claim), *aff'd sub nom*, *Edleman v. Schultz*, 683 F. App'x 60 (2d Cir. 2017).[1]

### *Lack of Factual Allegations Giving Rise to Plausible Grounds for Relief*

The complaint does not allege facts that give rise to plausible grounds for relief. The factual allegations of a complaint must be "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Moreover, "[a] court may dismiss a claim as 'factually frivolous' if the sufficiently well-pleaded facts are 'clearly baseless'—that is, if they are 'fanciful,' 'fantastic,' or 'delusional.'" *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) (quoting *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)).

Other than a bare allegation that defendants "paid" Officer Reid to arrest plaintiff (Doc. #1 at 1), the complaint alleges no other actions by any of the defendants. Plaintiff asks the Court to make "deductions" (Doc. #16 at 2) from the circumstances of Officer Reid's presence that defendants must have paid him off or improperly influenced him to arrest plaintiff. But such deductions are no more than speculation that does not rise to the level of stating plausible grounds for relief. *See, e.g.*, *Gallop*, 642 F.3d at 368–69 (affirming dismissal of complaint alleging that explosion at the Pentagon on September 11, 2001, was not the result of a hijacked airplane crashing into the Pentagon but was the result of explosives planted within the Pentagon at the conspiratorial behest of high-ranking government officials); *see also Betts v. Shearman*, 751 F.3d 78, 84–86 (2d Cir. 2014) (affirming dismissal of conclusory claim that a private actor acted under color of state law to have police arrest the plaintiff).

---

[1] To the extent that the complaint might be construed to allege any state law claims, the Court would have no federal diversity jurisdiction, because the parties are all from the State of Connecticut. *See* 28 U.S.C. § 1332. The Court otherwise declines to exercise supplemental jurisdiction over any state law claims.

*The Rule of Heck v. Humphrey*

Even assuming that plaintiff alleged plausible grounds for relief against the church or its pastor, plaintiff alleges that he pleaded no contest to these charges and that the charges for his arrest were never dismissed. In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that in order for a plaintiff "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486–87. If the Court were to rule in plaintiff's favor on his claims of false arrest or malicious prosecution, this would surely impugn the validity of the charges to which he himself alleges he has entered a plea of no contest. Accordingly, plaintiff's claims for false arrest and malicious prosecution are barred by the rule of *Heck v. Humphrey*.[2]

*Lack of Favorable Termination*

Lastly, defendants argue that the lack of a favorable termination of the charges precludes plaintiff's complaint. As to plaintiff's malicious prosecution claim, it is clear that the lack of a favorable termination of charges precludes the claim. *See Spak*, 857 F.3d at 461 n.1. As to

---

[2] According to the Connecticut Judicial Branch, plaintiff was arrested on August 2, 2015, and subsequently found guilty following pleas of *nolo contendere* on charges of breach of peace and interference with an officer on September 19, 2017. *See* State of Connecticut Judicial Branch, Criminal/Motor Vehicle Case Detail (Stephen Miller, Birth Year 1942) http://www.jud2.ct.gov/crdockets/CaseDetailDisp.aspx?source=Pending&Key=f25f44eb-e001-4b54-aa6a-8127f3899fc0 (last accessed August 20, 2018). There is no record on the Judicial Branch website of plaintiff's alleged arrest on June 21, 2015. Plaintiff has filed many motions on this docket, including one in which he now asserts that his "no contest" plea was solely for the charges stemming from his arrest at Stop & Shop on August 2, 2015, and not for "the church case." Doc. #19 at 2 (¶ 2); *see also* Doc. #33 at 1 (stating as to the "church case" that "[t]here is no pending trial and the judge refused to dismiss the charges"). Even assuming this to be so, it would not affect the Court's alternative determinations that plaintiff has not alleged any facts in either his initial or proposed amended complaint that would plausibly support a claim against either defendant, much less shown that the charges from his arrest at the church have been terminated in his favor.

6

plaintiff's false arrest claim, it is a closer issue. In view that an arrest may never ripen into formal criminal charges, there is good reason to doubt why a claim for false arrest—as distinct from a claim for malicious prosecution—should invariably be subject to a requirement that a plaintiff prove a favorable termination of an ensuing prosecution. *See Manuel v. City of Joliet, Ill.,* 137 S. Ct. 911, 918 (2017) (noting that "[t]he Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause," and "[t]hat can happen when the police hold someone without any reason *before the formal onset of a criminal proceeding*") (emphasis added); *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996) (false arrest claim under New York law does not require proof of favorable termination; "a person who asserts that he has been arrested without a warrant and without probable cause—a claim that does not seek to cast doubt upon judicial proceedings and is ripe upon arrest—need not insist that a prosecution be brought against him in order that he be allowed to pursue a claim for false arrest"); *see also Ruttkamp v. De Los Reyes*, 2012 WL 3596064, at *12 & n.21 (D. Conn. 2012) (noting that a favorable termination requirement for a false arrest claim would not logically apply if the only reason that subsequent proceedings do not terminate in an arrestee's favor is because of the police's post-arrest discovery of new evidence not known to police at the time of a baseless arrest).

Still, notwithstanding such concerns, the Second Circuit has ruled that a false arrest claim under Connecticut law requires proof of a favorable termination. *See Miles v. City of Hartford*, 445 F. App'x 379, 383 (2d Cir. 2011) (citing *Roesch v. Otarola*, 980 F.2d 850, 952 (2d Cir. 1992)). Moreover, the Connecticut Supreme Court has also observed that "[t]he same reasoning which makes conviction a defense in an action for malicious prosecution would apply as strongly to such a cause of action for false imprisonment as is here asserted, and if conviction is a defense

in one, so it should be in the other." *Clewley v. Brown, Thomson, Inc.*, 120 Conn. 440, 444 (1935); *see also Jordan v. Town of Windsor*, 2018 WL 1211202, at *6 (D. Conn. 2018) (same).

I am required to follow this precedent and to conclude for purposes of a constitutional claim of false arrest that arises in Connecticut that favorable termination of a prosecution is a required element of the cause of action for false arrest. Although plaintiff vacillates between whether he pleaded no contest to the charges from his arrest of June 21, 2015, or whether those charges remain pending (*see supra* footnote 2), he has not alleged that any charges from his arrest of June 21, 2015, have been favorably terminated.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss (Doc. #17) is GRANTED with prejudice. Plaintiff's motion to amend his complaint (Doc. #16) is DENIED on the ground that any amendment would be futile. *See Betts*, 751 F.3d at 86 (affirming denial of leave to re-plead where plaintiff "identified no facts that, if alleged, would bolster his allegations that the officers coached [defendant] to make false allegations"). Plaintiff's remaining pending motions (Docs. #18, #19, #20, #28, #29, #30, #31, #32, #33, #34, #35, #36 and #37) are DENIED as moot. The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 20th day of August 2018.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge